■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v BERNARD ALSTON, Respondent.—Order, Supreme Court, New York County (Alfred H. Kleiman, J.), entered on or about August 3, 1990, which granted defendant's motion to suppress evidence and dismissed the indictment, unanimously reversed, on the law, defendant's motion to suppress evidence denied, the indictment reinstated and the matter remanded to Criminal Term for further proceedings.

Shortly after noon on November 14, 1989, two police officers were on plainclothes anti-crime patrol in an unmarked car at Riverside Drive and West 74th Street when they observed defendant, who was carrying a backpack on his back, walking east on 74th Street. As he walked, defendant stopped for several seconds and looked into the lobby of each building he passed. After seeing defendant stop and look into three or four lobbies, one of the officers, Michael Sullivan, got out of the car and followed him on foot. Defendant continued in like manner east to West End Avenue, before traversing 73rd and 72nd Streets between West End Avenue and Riverside Drive and

then proceeding east on 71st Street towards West End Avenue. The officer observed defendant stop in front of a small brownstone at 336 West 71st Street, where he looked into the building's lobby before descending some steps and going through an iron gate which was underneath the building's entrance staircase and which led to an open doorway to the basement apartment.

Defendant disappeared from sight, but three minutes later, Officer Sullivan saw defendant coming out of the doorway and gate pushing a ten-speed bicycle and carrying his backpack over his forearm. The officer and his partner approached defendant and properly inquired of him if he lived there and what he was doing. Defendant answered that he didn't live there and that he was "just coming out". When the officer asked him if he knew anybody that lived there, defendant just looked at him. The officer then saw a man standing on the staircase above and asked whether he had ever seen defendant to which he replied "no". Officer Sullivan asked the man if defendant lived in the building and whether he knew who lived in the basement apartment. The man answered that he didn't know whether defendant lived there, but that a young couple lived in the basement apartment.

Officer Sullivan then walked up to defendant, told him he was under arrest, faced him towards the wall and handcuffed him. The officer then took defendant's backpack, opened it and discovered a pair of bolt cutters, a ball bearing, two saw blades and another tool.

The hearing court, in granting defendant's motion to suppress the seized evidence credited Officer Sullivan's testimony and found some objective credible reason for approaching and questioning the defendant, but concluded there was nothing that made permissible any greater level of intrusion.

In passing on the issue of probable cause for an arrest, the courts have consistently held that "the basis for such a belief must not only be reasonable, but it must appear to be at least more probable than not that a crime has taken place and that the one arrested is its perpetrator * * * In making such a judgment, we must also bear in mind that '[i]n dealing with probable cause * * * we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men [and women], not legal technicians, act' *(Brinegar v United States,* 338 US 160, 175)." *(People v Carrasquillo,* 54 NY2d 248, 254.)

Defendant's reaction to Officer Sullivan's approach and

questions was not as dramatic or incriminating as that of the defendant in *People v Casado* (83 AD2d 385, 387-388), who, upon being stopped for the purpose of inquiry, said "Oh, God", threw the bag full of loot he was carrying at the officer, and ran off. Nevertheless, the fact that defendant here may have kept a cooler head should not be determinative. It was clear that, after casing numerous buildings during his ramble, he had just entered a strange dwelling empty handed and reappeared with a bicycle. These observations when considered in conjunction with his unsatisfactory answers to the officer's questions and the comments of a building resident indicating an undenied apparent trespass were sufficient to warrant defendant's arrest.

Although the picture presented might possibly have been clearer had Officer Sullivan first asked defendant where he had gotten the bicycle, one does not have to prove every element of a crime beyond a reasonable doubt in order to have reasonable cause to inquire and then to make an arrest. The answer was obvious, particularly to an experienced police officer. Clearly, common sense, coupled with the totality of the circumstances, fully supports the conclusion that the officer had reasonable grounds to believe that defendant had just committed a crime, thus justifying his arrest and the subsequent search of his backpack. Concur—Sullivan, J. P., Kupferman, Ross, Kassal and Smith, JJ.